UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-80869-CV-Bloom
(Criminal Case No. 17-80080-CR-Bloom)

COREY PEARSON,

       Movant,

v.

UNITED STATES OF AMERICA,

       Respondent.

_____/

**REPORT AND RECOMMENDATION ON MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE [ECF No. 1]**

Corey Pearson, acting *pro se,* moves to vacate his conviction and sentence based on ineffective assistance by his trial counsel and, separately, by his sentencing and appellate counsel.  It is RECOMMENDED that the motion be DENIED.

**BACKGROUND AND PROCEDURAL HISTORY**

Mr. Pearson operated a tax preparation business, along with Stephane Anor, called Tax King.  He was charged by Indictment with one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349 (count 1); 21 counts of wire fraud, in violation of 18 U.S.C. § 1343 (counts 2–22); 11 counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A (counts 23–33); 2 counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (counts 34–35); and 3 counts of money

laundering in violation of 18 U.S.C. § 1957 (counts 36–38). Cr. ECF No. 1.[1] Anor was charged with conspiracy to commit wire fraud, wire fraud, and aggravated identity theft.

On May 24, 2017, the Court issued an Order Regarding Pretrial Procedures. The order required that, if Mr. Pearson rejected any plea offer, he would sign a document certifying that he had reviewed the offer. That certification was to be retained by the Government, not given to the court. Cr. ECF No. 17. After several continuances, trial was set for August 30, 2017. Cr. ECF No. 55.

On May 18, 2017, Lydia R. Pittaway, Esq., entered an appearance as retained counsel for Mr. Pearson.  Cr. ECF No. 11. On July 1, 2017, the Government emailed four plea offers to Pittaway.  ECF No. 7-2.  The Government also sent Ms. Pittaway a 10-page proposed stipulated statement of facts.  *Id.*  The July 1 Plea Offers comprised two sets: two of the offers expired on July 26, 2017 ("the July 26 Offers"); the other two expired on August 18, 2017 ("the August 18 Offers"). *Id.*

The July 26 Offers proposed that Mr. Pearson pleaded guilty to wire fraud and conspiracy to commit wire fraud. *Id.* at 25 ¶ 1, 31 ¶ 1. Mr. Pearson had the option of agreeing to a jointly-recommended sentence or to allowing each side to argue for any legal sentence it wanted.  *Id.* at 10–12 ¶¶ 8–9; 28– 29 ¶¶ 8–9.

The August 18 Offers proposed that Mr. Pearson plead guilty to money laundering and aggravated identity theft (which included a two-year mandatory

---

[1] Citations to the record in case number 17-80080 will be noted as "Cr. ECF No." Citations to the record in case number 21-80869 will be noted as "ECF No."

minimum sentence). *Id.* at 3 ¶ 1, 7 ¶ 1.  Here, too, Mr. Pearson could agree to a jointly recommended sentence or could reserve his right to argue for any sentence he wanted. The Government also sent Mr. Pittaway a proposed factual proffer that would form the factual basis for any of the proposed plea agreements. *Id.* at 14.

Mr. Pearson did not accept either of the July 26 Offers.  On July 27, 2017, the day after those offers expired, Alex Hanna, Esq., substituted for Ms. Pittaway as Mr. Pearson's counsel. Cr. ECF No. 32. On July 28, 2017, in response to a request from Mr. Hanna, the Government emailed Mr. Hanna the same four plea offers that had previously been sent to Ms. Pittaway, along with the proposed factual proffer. ECF No. 1-2.

On August 10, 2017, Ms. Anor pled guilty to conspiracy to commit wire fraud. Cr. ECF No. 45.

On August 15, 2017, Andrew Stine, Esq., entered an appearance as co-counsel for Mr. Pearson.  Cr. ECF No. 52, 53. At Mr. Stine's request, on August 23, 2017, the Government sent him copies of the July 26 Offers and the August 18 Offers.  ECF No. 1-3.  Three days later, on Saturday, August 26, 2017, (four days before the trial date), the Government offered to have Mr. Pearson plead guilty to either of the August 18 Offers. ECF No. 1-4.

A.    *Pre-trial colloquy about plea offer*

Trial began on Wednesday, August 30, 2017. Immediately before trial, the Court asked whether the parties had complied with the Court's Order Regarding Pretrial Procedures. Mr. Hanna reported that Mr. Pearson was "refusing to sign the

certifications." Cr. ECF No. 267 at 12. The Court asked Mr. Pearson whether he had had the opportunity to review any plea offers made by the Government. *Id.* at 13. Mr. Pearson responded that "I keep telling them that I don't want to agree to something that I haven't fully researched. . . ." *Id.*[2]

Mr. Pearson also took the position that he was not ready to proceed to trial. The Court asked his counsel, "Is there a reason why Mr. Pearson is not ready to proceed to trial?" In Mr. Pearson's presence, Mr. Stine explained, "[C]ounsel is ready to proceed to trial. We have counseled Mr. Pearson on any and all possible plea offers. We have provided him with all of the evidence. We've gone over everything with Mr. Pearson. We are ready to proceed." *Id.* at 80. Mr. Stine explained that although counsel was ready for trial Mr. Pearson "believes that the Government has provided information in the discovery that is false." *Id.* The Court then addressed Mr. Pearson. Among other things, the Court explained to him,

> I want to ensure that you have had every opportunity to consider any offer that the Government may have made. And I want to ensure that the record is clear, because I don't want to have an issue following this trial that there's a claim that you have not had the opportunity through counsel to sufficiently review any offers that the Government has made.

Cr. ECF No. 267 at 81. The Court asked Mr. Hanna and Mr. Stine whether they had reviewed the plea offers with Mr. Pearson. Mr. Stine responded, "Yes, Your Honor." *Id.* at 82. The Court then asked Mr. Pearson whether he had rejected the offers and

---

[2] Mr. Pearson also stated several times to the Court that he was not ready for trial because he believed the government was going to mislead the jury. Cr. ECF No. 267 at 75–79.

he responded, "I did not reject it. It's things on there that I didn't do.   I don't want to mislead you by saying I'm guilty.  I don't want to mislead you at all.  I would consider it, but I want to make sure like it is what I did." *Id*. at 82–83. The Court then asked counsel, "Mr. Stine or Mr. Hanna, has Mr. Pearson been given an opportunity to review what the Government has provided?"  Mr. Stine replied, "Yes, Your Honor." After Mr. Pearson again stated that he had not rejected the Government's offer, the Court took a recess so that Mr. Hanna and Mr. Stine could confer with Mr. Pearson. *Id*. at 84.

After the recess, the Court asked Mr. Hanna whether the lawyers and Mr. Pearson had "a sufficient opportunity . . .  to review whatever plea offers the Government has provided?" *Id*. at 84. Mr. Hanna responded, "Yes, Your Honor." *Id*. Mr. Pearson did not dispute Mr. Hanna's statement. The Court then asked whether the Government's offer was "being accepted or rejected by Mr. Pearson."  *Id*. Mr. Hanna responded, "Neither, Your Honor."

After further discussion, the Court asked Mr. Stine whether he had the Government's written plea offer. Mr. Stine responded

> Not only do we have it, but we have given it to Mr. Pearson—and I won't go over the terms of it—for approximately two weeks. And as a matter of fact, this week, the Government was kind enough to go ahead and send it to us, a new offer, while I'm not going to get into the terms, but we went over the new offer with Mr. Pearson this weekend and we worked on it continuously. This is the --we continuously get: "I'm not going to do anything. I'm not going to sign anything. I'm not going to say yes. I'm not going to say no." This has been going on for approximately three weeks.

*Id*. at 89. Mr. Hanna represented to the Court,

> [W]e've worked diligently not only to prepare for trial, but also to work the different plea agreements. We've explained in minute detail everything that's been going on on Mr. Pearson's behalf. We've spent countless hours, my staff, multiple meetings with Mr. Pearson, and we just can't get anything other than: "It's misleading. I don't disagree, but I don't agree. I need time to think about it[.]"

*Id*. at 90. Then Mr. Stine described his efforts to familiarize Mr. Pearson with one of the Government's plea offers:

> [O]n Friday Mr. Pearson was in my office for several hours and we went over all of the documents, and this is—all of the plea. We went over the entire plea—and this is how it was left after four hours, after going over one plea for four hours. I read every sentence, every line, to Mr. Pearson. I did that with great clarity. . . .

> Monday we went over it again, because we were getting: "I'm not signing it. I'm not rejecting it, but I'm not accepting it," and it continues. . . . .

> The United States Government provided it here again today. Went into the room this morning at about maybe 8:20, went over the same plea that we've gone over several times, with the addition of one charge of identity theft was added. And with that being said, went over everything, went over the guidelines and it's the same – it's become the same thing now. "I don't deny and I don't want to accept it."

*Id*. at 93. The Court found that Mr. Pearson had had sufficient time to consider the plea offers and ordered that, after the lunch break, Mr. Pearson should sign the Government's cover sheet stating that he had rejected the offers. *Id*. at 94, 114.

After the lunch break, Mr. Pearson still had not signed the certifications. Cr. ECF No. 267 at 116. Mr. Pearson explained, "I would consider the plea if it was fixed. I don't want to reject it. So I need more time on the plea so it could be fixed." *Id*.

Mr. Stine explained that he had spoken to the Government and that "[t]he plea is not changing from what Mr. Pearson has been shown for three weeks now." *Id.* at 117. The Court asked Mr. Pearson, "did you, in fact, receive the Government's offer, sir?" *Id.* Mr. Pearson responded, "I received it, but I didn't agree to it." *Id.* at 117–18.

During the discussion with the Court that followed, Mr. Pearson said, "[M]y team, they're good, they're a great team," but he complained that they were being misled. *Id.* at 123. Mr. Pearson added, "It says this. I'm like: 'Okay. I didn't do that.' But you know, it's got this, I'm like: 'All right'—" *Id.* at 123. The Court asked Mr. Pearson if he wanted to accept the Government's plea offer or to go to trial. *Id.* at 124–125. Mr. Pearson said "It needs to be fixed. Then I'll determine if I reject it or not." *Id.* at 125. The Court cautioned Mr. Pearson, "I've spent a good deal of time with you and you're not giving the Court a straight answer. So do you want to proceed to trial or do you want to accept what the Government is offering?" *Id.* Mr. Pearson responded that "I don't want to accept it and I'm not rejecting it. . . . I'd like to consider it." *Id.* at 125. The Court then announced that it would proceed to trial. Cr. ECF No. 267 at 125–126. The Court stated that the situation was "very clear":

> Mr. Pearson doesn't want to agree to certain facts that the Government wants him to agree to. And as a result, he doesn't want to accept what the Government is offering [H]e doesn't want to accept what the Government's offering because he doesn't want to admit to the facts.

*Id.* at 126.

B.    *Trial*

At trial, Mr. Stine represented Mr. Pearson in all trial matters, including all appearances before the jury. *See generally* Cr. ECF No. 129–204, 211, 216, 225, 267. After presentation of the evidence, Mr. Stine moved for judgment of acquittal on the charges of money laundering and aggravated identity theft. Cr. ECF No. 211 at 2–4, 7–9, 10–11. The Court granted Mr. Stine's motion as to counts 9, 19, 22, 26, 30, and 31 and denied it as to the remaining counts. *Id*. at 11–12. The jury found Mr. Pearson not guilty on counts 4 and 20 and guilty on all the remaining counts. Cr. ECF No. 146.

C.    *Post-trial*

On October 11, 2017, Mr. Hanna moved for an extension of time to file a post-trial motion for judgment of acquittal. Cr. ECF No. 150. The Court granted the motion and gave Mr. Pearson until October 26, 2017 to file the motion. Cr. ECF No. 151.

The next day, October 12, 2017, Mr. Pearson moved to discharge Mr. Hanna and Mr. Stine and requested appointment of counsel. Cr. ECF No. 152, 155. On October 23, 2017, the Court granted the motion and appointed Ana Davide to represent Mr. Pearson. Cr. ECF No. 169. When Mr. Hanna was discharged, he moved for another extension of time for Mr. Pearson to file a motion for judgment of acquittal, to allow Ms. Davide time to file the motion. Cr. ECF No. 227 at 8.

D.   *Sentencing*

On December 5, 2017, the Court sentenced Anor to 36 months' incarceration.  Cr. ECF No. 187. In calculating the loss in Anor's case, the Court held Anor responsible for all fraudulent returns filed from Tax King's West Palm Beach office, including returns that listed people other than Anor as the preparer. Cr. ECF No. 287 at 5–8.

The presentence report calculated Mr. Pearson's total offense level to be 31 and his incarceration range on the fraud and money-laundering counts to be 108–135. Cr. ECF No. 176 ¶¶ 104, 140. Mr. Pearson also faced a mandatory two-year consecutive term of incarceration for aggravated identity theft. *Id.* ¶¶ 138–139. In her written objections, Ms. Davide argued that Mr. Pearson's relevant conduct should not include counts dismissed at trial or returns filed by NPN Multiservices, Cr. ECF No. 220 at 2, 6; that Mr. Pearson should not receive a leadership role enhancement, *Id.* at 3–5, 7–8; that the offense involved fewer than ten victims, *Id.* at 6; and that the offense did not involve sophisticated means, *Id.* at 6–7. Based on these objections, Ms. Davide argued that the correct range was 57–71 months. *Id.* at 9.

At sentencing on April 25, 2018, Ms. Davide again argued that the Court should not sentence Mr. Pearson based on the loss associated with the dismissed counts. Cr. ECF No. 270 at 20. She did not renew her objection to the inclusion of NPN Multiservices's returns in Mr. Pearson's relevant conduct. However, she maintained her other objections. The Court sustained her objection to the role adjustment, *Id.* at 19, but overruled her other objections. After the Court ruled on Ms. Davide's

9

objections, the Government argued and the probation officer agreed that, because of the way the grouping rules work, Mr. Pearson's total offense level would still be 31 even without the role adjustment. *Id*. at 95–103. Ms. Davide requested a downward variance equivalent to the role adjustment, so that Mr. Pearson would receive a benefit based on the Court's ruling regarding role. Cr. ECF No. 271 at 11–17. The Court granted a two-level downward variance and sentenced Mr. Pearson to 100 months incarceration for the fraud and money laundering and to the mandatory 24-month consecutive term for the aggravated identity theft, for a total sentence of 124 months' incarceration. Cr. *Id*. at 29–31; Cr. ECF No. 257.

E.     *Appeal*

Ms. Davide timely filed a Notice of Appeal for Mr. Pearson. She filed a 70-page appellate brief on February 22, 2019. Ex. 5.  The brief raised the following issues:

1.  Mr. Pearson was denied due process because the Court declined to declare a mistrial after a 22 day interruption of the trial caused by Hurricane Irma;

2.  The trial court wrongly denied a motion to suppress evidence seized by search warrant from Tax King's offices;

3.  The trial court wrongly denied a motion to suppress evidence seized from Tax King's computers;

4.  Mr. Pearson should be granted a new trial because:

    a.  The trial court wrongly admitted statements by Ms. Anor to law enforcement;

      b.  The trial court wrongly permitted the Government to introduce IRS expert testimony;

      c.  The trial court wrongly permitted the Government to introduce evidence of unrelated, uncharged conduct involving other fraudulent tax returns;

      d.  The trial court wrongly denied a motion to sever.

5. There was insufficient evidence to support Mr. Pearson's convictions;

6. The Indictment was constructively amended by the evidence at trial;

7. There was a material variance between the Indictment and the evidence at trial;

8. The trial court wrongly attributed the entire loss amount from the conspiracy to Mr. Pearson for purposes of the Sentencing Guidelines calculation.

On February 26, 2019, four days after Ms. Davide filed Mr. Pearson's appellate brief, the Eleventh Circuit vacated Ms. Anor's sentence. Cr. ECF No. 287. The case was remanded so that this Court could make findings about the scope of the criminal activity that Ms. Anor had agreed to jointly undertake. *Id*. at 12. On May 17, 2019, the Court resentenced Ms. Anor to 24 months' incarceration. Cr. ECF No. 294.

On October 14, 2020, the Eleventh Circuit affirmed Mr. Pearson's conviction. *United States v. Pearson,* 832 Fed. Appx 679 (11th Cir. 2020).

Mr. Pearson timely filed his § 2255 petition on May 13, 2021.

## MR. PEARSON'S ALLEGATIONS

Mr. Pearson argues that the Court should vacate his conviction because Mr. Hanna and Ms. Davide provided ineffective assistance of counsel. ECF No. 1-2 at 14. Specifically, he alleges that Mr. Hanna:

1. Failed to understand the charging document.

2. Failed to understand the elements of the charges.

3. Failed to investigate possible exculpatory evidence.

4. Failed to provide him with copies of the written plea agreements end to explain those agreements to him.

5. Failed to investigate and subpoena exculpatory witnesses.

6. Failed to explain what the jury would need to find in order to convict.

7. Failed to provide discovery, the indictment, and other case specific materials.

8. Failed to disclose his true legal credentials to his client.

9. Failed to advise Mr. Pearson of the potential penalties after a trial.

10. Failed to advise Mr. Pearson that the Government had offered a thirty-six-month resolution.

11. Failed to advise Mister Pearson that he did not know how to handle a federal trial or sentencing and did not familiarize himself with federal practice and rules.

12. Failed to follow the ethical standards of a member of the Florida bar.

*Id.* at 5–6.  He also alleges that Mr. Hanna should have argued that there was insufficient evidence that he conspired with Ms. Anor.  ECF No. 1-2 at 7.

Separately, Mr. Pearson alleges that Ms. Davide was constitutionally ineffective at sentencing and on appeal.  He points to:

1. The 11th Circuit rejected Ms. Davide's arguments that (1) the search warrant affidavit failed to establish probable cause; (2) a separate warrant was required to search Tax King's password-protected computers;

2. The 11th Circuit noted that Ms. Davide had not cited record evidence to support the argument that (1) the trial court erred by admitting Ms. Anor's statement; (2) the Government improperly called an expert witness to testify that the tax returns were fraudulent; (3) Mr. Pearson was prejudiced by the introduction of tax returns under Fed. R. Evid. 404(b).

3. The 11th Circuit found that Ms. Davide had waived a constructive amendment/material variance argument by not raising it in her opening brief.

4. Ms. Davide did not properly challenge the district court's loss calculation before the trial court and on appeal, by (1) not objecting at sentencing to the Court treating tax returns prepared by others as relevant conduct for Mr. Pearson and (2) not asking the district court to make specific findings about the scope of the conspiratorial agreement and then not appealing the lack of those findings.

5. Ms. Davide failed to raise issues on direct appeal which are now foreclosed on collateral attack.

Mr. Pearson also asserts that the Court appointed Ms. Davide in retaliation against Mr. Pearson for exercising his right trial. ECF No. 1-2 at 12.

## LEGAL STANDARD

To establish ineffective assistance of counsel, a defendant must prove both "(1) that 'counsel's performance was deficient' because it fell below an objective standard of reasonableness,' and (2) that 'the deficient performance prejudiced the defense[.]'" *E.g.*, *Crawford v. Head*, 311 F.3d 1288, 1296 (11th Cir. 2002) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). The defendant "bears the burden of proof regarding both deficient performance and prejudice." *Harvey v. Warden*, 629 F.3d 1228, 1238 (11th Cir. 2011). This burden is "a heavy one." *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006). "Conclusory allegations of ineffective assistance are insufficient." *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) (per curiam) (citation omitted); *see also Lynn v. United States*, 365 F.3d 1225, 1239 (11th Cir. 2004) (conclusory allegations supporting § 2255 claim do not warrant evidentiary hearing).

In assessing deficiency, Courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689; *Chateloin v. Singletary*, 89 F.3d 749, 752 (11th Cir. 1996) (for purposes of the deficiency prong, "[a] strong presumption exists that the challenged action constitutes sound trial strategy."). "[B]ecause counsel's conduct is presumed reasonable, for [Movant] to show that the conduct was unreasonable, [he]

must establish that no competent counsel would have taken the action that his counsel did take," or failed to take the action that counsel failed to take. *See Chandler v. United States*, 218 F.3d 1305, 1314–15 (11th Cir. 2000) (en banc). To meet this standard, Movant "must establish that particular and identified acts or omissions of counsel were outside the wide range of professionally competent assistance." *Id.* at 1314 (citation and internal quotation marks omitted). "[A]n attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief." *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1297 (11th Cir. 2017) (collecting cases).

To prove prejudice, a movant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Counsel's failure to raise a meritless claim is not prejudicial under *Strickland. Hittson v. GDCP Warden*, 759 F.3d 1210, 1262 (11th Cir. 2014).

## DISCUSSION

A.   *Pretrial and Trial Counsel*

As detailed above, Mr. Pearson makes numerous allegations that he received ineffective assistance of counsel during the pretrial and trial phases because of Mr. Hanna's deficient performance. It is instructive to note, however, that Mr. Hanna was sole counsel for only 18 days.  At all other times, Mr. Pearson was represented solely by Ms. Pettiway or Mr. Stine was acting as co-counsel to Mr. Hanna.  Importantly,

Mr. Pearson does not allege that Ms. Pettiway or Mr. Stine's performance as his counsel was constitutionally ineffective.

Several of Mr. Pearson's assertions about Mr. Hanna rest on factually-unsupported, conclusory statements that are insufficient to support a finding of deficient performance.  Mr. Pearson alleges that Mr. Hanna did not understand the Indictment and did not understand the elements of the crimes charged.  There is no evidence cited in support of these conclusions. Mr. Pearson summarily alleges that Mr. Hanna failed to investigate possible exculpatory evidence and failed to compel exculpatory witnesses to testify at trial.  He does not identify the evidence or the witnesses that he alleges would have exculpated him.  Without more, the conclusory allegation that Mr. Hanna failed to investigate and present unspecified exculpatory evidence is insufficient to meet Mr. Pearson's burden of showing deficient performance.  *See Aron v. United States*, 291 F.3d 708, 715, n. 6 (11th Cir. 2002) (in order to be entitled to an evidentiary hearing, defendant must allege "reasonably specific, non-conclusory facts that, if true, would entitle him to relief"); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (claim of ineffective assistance of counsel subject to dismissal without a hearing if it consists of "conclusory allegations unsupported by specifics").[3] It also precludes a finding of prejudice: without knowing the allegedly-exculpatory evidence, the Court cannot find a reasonable probability that the trial outcome would have been affected.

---

[3] Mr. Hanna submitted a sworn Declaration refuting Mr. Pearson's allegations.  ECF No. 7-6.  I need not consider this Declaration, however, because Mr. Pearson has not met his initial burden of producing evidence to support his allegations.

Mr. Pearson alleges that Mr. Hanna did not present him with the written plea agreement and did not fully explain its terms, his sentencing exposure, and the potential financial penalties. Mr. Hanna took over from Ms. Pettiway after the July 26 Offers had expired. Mr. Pearson does not allege that Ms. Pettiway failed to present the plea offers. The August 18 Offers remained open after Mr. Stine became co-counsel and were kept open until the day of trial. Mr. Pearson does not allege that Mr. Stine failed to present and explain the plea offers.

Moreover, the uncontroverted record demonstrates that Mr. Stine and Mr. Hanna explained the plea offers to Mr. Pearson. *See Stano*, 901 F.2d  at 899 (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)) (no evidentiary hearing required on "contentions that in the face of the record are wholly incredible."). During the hearing prior to jury selection, in response to a direct question by the Court, Mr. Pearson admitted that he received the Government's plea offers. He repeatedly asserted that the plea offers needed to be "fixed" and contained false facts. He could have those concerns only if he had received and reviewed the plea offer, including the factual proffer. And, multiple times during the same hearing, Mr. Stine told the Court that he and Mr. Hanna had gone over the written plea agreement with Mr. Pearson. Cr. ECF No. 267 at 80, 82, 83, 84, 90, 93. Mr. Pearson was present and did not contradict Mr. Stine's statements. After a lengthy colloquy and having observed Mr. Pearson and his counsel in person, the Court concluded that Mr. Pearson had sufficient time to review the Government's plea offers. *Id*. at 94. For all these reasons, Mr. Pearson has not established deficient performance on this basis.

Mr. Pearson's assertion that he never received the discovery fares no better. When asked if defense counsel was ready to proceed to trial, Mr. Stine said, "We have counseled Mr. Pearson on any and all possible plea offers. *We have provided him with all of the evidence. We've gone over everything with Mr. Pearson.* We are ready to proceed." *Id.* at 80 (emphasis added). Mr. Stine explained that although counsel was ready for trial Mr. Pearson "believes that the Government has provided information in the discovery that is false." Cr. ECF No. 267 at 80. Mr. Pearson did not object to any of Mr. Stine's statements. Logically, Mr. Pearson could not have concluded that information in the discovery was false unless he had reviewed the discovery.

And, the Court specifically told Mr. Pearson, "If you're not ready [for trial] because there's certain discovery that you have not reviewed, then you need to communicate that with me." *Id.* at 86–87. Despite this direct invitation, Mr. Pearson did not tell the Court that counsel had failed to show him the discovery. His belated claim is conclusively refuted by the contemporaneous record. Moreover, Mr. Pearson has not offered any evidence to meet his burden of showing how he was prejudiced by not seeing all of the discovery.

Similarly, Mr. Pearson's claim that he was not aware of the potential penalties is conclusively contradicted by the record. Each of the proposed plea agreements enumerated the maximum penalties. As discussed above, Mr. Pearson acknowledged (and counsel confirmed to the Court) that he received and reviewed the plea offers. In the course of reviewing the plea agreements, counsel would have reviewed the maximum penalties.

Mr. Pearson claims that Mr. Hanna never informed him that the Government had offered a plea to a 36 month sentence. Mr. Pearson now claims that if he had known that the Government offered a 36 month plea deal, he would have taken it. *Id.* at 7. This assertion is meritless and conclusively contradicted by the record. Mr. Pearson does not cite to any evidence that the Government ever proposed such a resolution. To the contrary, the record evidence demonstrates that this offer was never made. Two of the Government's plea offers included an agreement that the parties would jointly recommend a Guideline range and would waive their right to request a sentence outside that range. For the July 26 Offers, the jointly-recommended sentence was based on a Sentencing Guidelines offense level of 31. ECF No. 7-2 at 28. Under the Guidelines in effect in April 2018, the advisory sentencing range for an adjusted offense level of 28 (level 31 minus 3 points for acceptance of responsibility) and a criminal history category I was 78-97 months. For the August 18 Offers, the jointly-recommended sentence was based on a Sentencing Guidelines offense level of 33. ECF No. 7-2 at 11. In April 2018, the advisory sentencing range for an adjusted offense level of 30 (level 33 minus 3 for acceptance of responsibility) was no lower than 97-121 months. Mr. Pearson has failed to meet his burden of showing that a 36 month plea offer was extended to him. Because no 36 month offer existed, Mr. Hanna cannot have been constitutionally ineffective for not presenting it to his client.

Even if a 36 month offer had existed and was not communicated to him, Mr. Pearson has not shown prejudice because he has not offered any corroboration to support his current claim that he would have accepted the offer. *See Diaz v. United*

*States*, 930 F.2d 832, 835 (11th Cir. 1991) (*United States v. Cieslowski*, 410 F.3d 353, 359 (7th Cir. 2005) *United States v. Gordon*, 156 F.3d 376, 380-81 (2d Cir. 1998). To the contrary, Mr. Pearson repeatedly objected to the plea offer because it required him to admit information he alleged was false; he never expressed a concern about the length of his potential sentence. Indeed, the Court's contemporaneous finding, after observing Mr. Pearson, was that he "doesn't want to accept what the Government's offering because he doesn't want to admit to the facts." Cr. ECF No. 267 at 126. Mr. Pearson has not shown prejudice.

Mr. Pearson asserts that Mr. Hanna should have argued that there was no evidence that Mr. Pearson conspired with Anor. ECF No. 1 at 7. There was no pretrial opportunity to make this argument. Mr. Stine, not Mr. Hanna, conducted the trial. The court of appeals ultimately concluded that there was "voluminous" evidence that Mr. Pearson conspired with Wilson and Anor and that the jury could "readily" find Mr. Pearson guilty of conspiracy. Cr. ECF No. 295 at 29. For all these reasons, Mr. Pearson cannot satisfy either *Strickland* prong based on Mr. Hanna's alleged deficient performance.

Finally, several of Mr. Pearson's assertions, even if factually true, are irrelevant to the *Strickland* analysis. It does not matter whether Mr. Hanna was objectively qualified to handle a federal criminal case and whether he made necessary disclosures about his experience to Mr. Pearson. It also does not matter whether Mr.

Hanna violated the Florida Rules of Professional Conduct.[4]   The first *Strickland* prong turns on the actual performance of counsel.   *See United States v. Hennis*, 77 M.J. 7, 10 (C.A.A.F. 2017) ("limited experience does not raise a presumption of ineffectiveness."); *Bland v. State*, No. W2007-00020-CCA- R3-PD, 2009 Tenn. Crim. App. LEXIS 283, at *107 (Crim. App. Apr. 3, 2009) ("A successful claim of ineffectiveness requires more than just a showing that counsel was inexperienced. The [p]etitioner must demonstrate with specificity that counsel made errors so serious that counsel was not functioning as counsel guaranteed the defendant by the Sixth Amendment and that such errors prejudiced the defense.").

In sum, Mr. Pearson has not shown that he received constitutionally ineffective representation from his pretrial and trial counsel, viewed individually or collectively.

B.   *Appellate counsel*

Mr. Pearson contends that there were "significant deficiencies" in many of the arguments that Ms. Davide made on appeal. ECF No. 1-2 at 10.   Several of his allegations ignore that it is not constitutionally deficient performance for a lawyer to raise but lose an issue on appeal.

He first argues that Ms. Davide was constitutionally deficient because the Eleventh Circuit rejected her arguments that the search warrant affidavit lacked probable cause and that the Government should have been required to get a separate warrant for Tax King's computers.   He does not complain that Ms. Davide failed to

---

[4] To be clear, I make no finding that Mr. Hanna lacked necessary experience or violated any ethical norm.

raise otherwise meritorious arguments.  Instead, he complains that she raised, but lost, legally-meritless ones.  This argument fails to satisfy either *Strickland* prong.

He next argues that Ms. Davide was deficient because the Eleventh Circuit found that she had not cited evidence in the record to support her argument that the Government wrongly introduced Anor's statements and the IRS expert witness' testimony.  In his Petition, Mr. Pearson does not identify where in the record this evidence exists.  The Government represented to the Court of Appeals (and repeats here) that no such evidence was introduced.  The Eleventh Circuit confirmed that this evidence was not introduced. *Pearson,* 832 Fed. Appx at 687. Therefore, Mr. Pearson was not prejudiced by the introduction of this evidence nor by the manner in which Ms. Davide litigated this issue on appeal.

Mr. Pearson next claims that Ms. Davide's performance was deficient because she failed to point the Court of Appeals to the specific evidence of uncharged false tax returns that were admitted under Fed. R. Evid. 404(b).  Although the appellate brief did not identify this evidence, the Eleventh Circuit conducted an independent full review of the trial record and held that the uncharged returns were properly admitted into evidence. *Id.* at 688.  Here, too, Mr. Pearson was not prejudiced.

Mr. Pearson next asserts that Ms. Davide failed to properly argue that the charges against him were constructively amended or that the evidence at trial materially varied from the Indictment. Ms. Davide's brief raised the argument that there had been a constructive amendment to counts 2, 4-11, and 14-22. A constructive amendment occurs "when the essential elements of the offense contained in the

indictment are altered to broaden the possible bases for conviction beyond what is contained in the indictment." *United States v. Madden,* 733 F.3d 1314, 1318 (11th Cir. 2013) quoting *United States v. Keller,* 916 F.2d 628, 634 (11th Cir. 1990). For example, in *Madden,* the indictment charged the defendant with carrying a firearm during and in relation to a crime of violence; the jury was instructed that it could convict if the Government proved the defendant carried the firearm during and in relation to a drug trafficking offense. The Eleventh Circuit held that the jury instruction constructively amended the indictment. *Id.* at 1318–19.

Counts 2-22 were substantive wire fraud counts that alleged Mr. Pearson "did knowingly transmit and cause to be transmitted" interstate wires in furtherance of a fraud scheme. Cr. ECF No. 1 at 5–6. Ms. Davide's appeal brief argued that a constructive amendment occurred because the evidence at trial proved that someone other than Mr. Pearson prepared the underlying fraudulent tax returns. ECF No. 7-5 at 78. The Eleventh Circuit held that the constructive amendment argument was waived because the appellate brief did not properly develop it.

Even assuming that the failure to develop this argument was deficient performance, there is no prejudice because the argument lacks merit. Who *prepared* the fraudulent document does not matter. Mr. Pearson was charged with *transmitting or causing the transmission of* a writing in furtherance of the fraud. The trial court correctly instructed the jury on this requirement. Cr. ECF No. 269 at 131–33. For similar reasons, and as fully explained by the Eleventh Circuit, the facts proved at trial did not materially vary from the Indictment. 832 Fed. Appx. at 688–

89.  As such, there was no prejudice even assuming Ms. Davide failed to properly raise this issue on appeal.

Mr. Pearson next argues that Ms. Davide was ineffective because the appellate brief did not sufficiently make the argument that his Sentencing Guidelines loss should have been limited to the loss that was reasonably foreseeable to him. Relatedly, Mr. Pearson objects that Ms. Davide did not properly argue that the trial court should have made specific findings about the scope of Mr. Pearson's conspiratorial agreement and what losses were reasonably foreseeable to Mr. Pearson based on that agreement. The lack of these kinds of findings was the reason the Eleventh Circuit vacated Ms. Anor's sentence.

The Guidelines instruct that the loss amount for a conspiracy or scheme is based on all acts or omissions by criminal participants that are (1) within the scope of the joint criminal activity, (2) in furtherance of that activity, and (3) reasonably foreseeable to the defendant.  U.S.S.G. § 1B1.3.  Mr. Pearson was held responsible for $ 5.1 million in total intended loss, with 4.5 million being related to Tax King, alone.  Cr. ECF No. 253 ¶ 81. A finding of less than $3.5 million would have been necessary to drop to the next lower Guideline range. Although the Court did not make an explicit finding that the conduct giving rise to more than $3.5 million in loss was reasonably foreseeable to Mr. Pearson given the scope of his conspiratorial agreement, the Court explained at sentencing how Mr. Pearson played a crucial role in the large-scale fraud:

> The testimony and other evidence in this trial revealed that you stole and received large amounts of money. It was a massive fraud and a very intricate scheme over the course of two years. And while you may not have played a managerial role, as the Court found, you certainly played

24

a critical role. You had direct access to the money that was deposited in the bank account, and you benefited from that money.

You incorporated Tax King. You were the person that opened the checking account with Bank of America. You were the one that requested and received from IRS the EFIN for Tax King. You were the one that purchased the software and opened the account with Drake Software, which was later an account with EPS Financial, provided the same type of service as ADVENT, another account that you yourself opened up.

You were responsible -- and as you recall, the testimony revealed that you were responsible for several fraudulent filings and fraud, stolen identity refund, payroll tax, American Opportunity Tax Credit, all fraud that you were directly involved with.

Cr. ECF No. 271 at 28–29.  These statements made clear that the Court considered Mr. Pearson's conspiratorial agreement to have included all of the activities at Tax King. So, it would have been well within Ms. Davide's professional judgment not to advocate for even more specific findings at sentencing, or on appeal.  Moreover, Mr. Pearson has not shown a reasonable probability that the Court would have held him responsible for an intended loss less than $ 3.5 million if Ms. Davide had asked for an explicit finding. Hence, he has not met his burden of showing that he is entitled to relief under *Strickland*.

Finally, Mr. Pearson argues, without any factual support, that Ms. Davide was appointed "in retaliation for him exercising his constitutional right to go to trial."  ECF No. 1-2 at 12.  This argument is wholly speculative and insufficient to merit relief under § 2255.

## CERTIFICATE OF APPEALABILITY

A prisoner seeking to appeal a district court's final order denying his motion to vacate has no absolute entitlement to appeal, but must obtain a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253 (c)(1); *Harbison v. Bell*, 556 U.S. 180, 183 (2009). This Court should issue a certificate of appealability only if the prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253 (c)(2). To merit a certificate of appealability, prisoners must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). *See also Eagle v. Linahan*, 279 F.3d 926, 935-36 (11th Cir. 2001).

In this case, there is no basis to issue a certificate of appealability.

## RECOMMENDATION

Based on the foregoing, **IT IS RECOMMENDED** that Mr. Pearson's Motion to Vacate, Set Aside, or Correct Sentence (ECF No. 1) be **DENIED**. In addition, this Court should **NOT ISSUE** a certificate of appealability. Accordingly, this case should be **CLOSED**.

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Robin L. Rosenberg, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the

district court's order based on unobjected-to factual and legal conclusions." 11th Cir.

R. 3-1 (2016).


    **DONE and SUBMITTED** in Chambers at West Palm Beach, Palm Beach

County, in the Southern District of Florida, this 20th day of September 2021.


_____

BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE